**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TAIRLA POWELL,**

                            **Plaintiff,**

   vs.                                                        3:11-CV-1304
                                                                      (MAD/DEP)

**ARTHUR JOHNSON, Commissioner**
of Department of Social Services, in his official
capacity,

                            **Defendant.**
_____

**APPEARANCES:**                                       **OF COUNSEL:**

**TAIRLA POWELL**
95 Brown Street
Johnson City, New York 13905
Plaintiff *pro se*

**BROOME COUNTY**                          **ROBERT G. BEHNKE**
**ATTORNEY'S OFFICE**
Edwin L. Crawford County Office Building
P.O. Box 1766
Binghamton, New York 13902-1766
Attorneys for Defendant Johnson

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     In her second amended complaint, Plaintiff states a cause of action against Defendant Arthur Johnson pursuant to 42 U.S.C. § 1983.[1] *See* Dkt. No. 22 at 1. Plaintiff alleges that Defendant Johnson is liable for negligent investigation, negligent misrepresentation, violating Plaintiff's right to due process, and subjecting Plaintiff to cruel and unusual punishment. *See* Dkt.

---

[1] In the amended complaint, Plaintiff has not asserted claims against any parties other than Defendant Johnson.

No. 22-1 at 7. The basis for these claims are two separate instances in which the Broome County Department of Social Services investigated Plaintiff based on reports of suspected child abuse. As a result of these investigations, Plaintiff's name was entered into New York State's Central Register of Suspected Child Abusers ("Central Register"). *See* Dkt. No. 22 at 1. Currently before the Court is Defendant's motion to dismiss the second amended complaint. *See* Dkt. No. 23-2.

## II. BACKGROUND

**A.     Statutory Scheme**

Plaintiff challenges the constitutionality of the procedures followed by the Broome County Department of Social Services ("DSS"). The recording and investigation of reports of suspected maltreatment of children, as well as the administrative review process by which substantiated reports are reviewed is governed by Article 6, Title 6 of the New York State Social Services Law. *See* N.Y. Soc. Serv. Law §§ 411-428 (McKinney 1992) (as amended in 1993) ("SSL"). The Central Register is a database which maintains reports of child abuse as part of a larger system to ensure the safety of children in New York State. *See id.* at § 411.

The local DSS is responsible for investigating all complaints of suspected child abuse and must investigate the truth of the charges and complete an investigation within sixty days of the initial report. *See id.* at §§ 423(1), 424 (7). At the conclusion of an investigation, the local department must determine whether the complaint is "unfounded" or "indicated." *Id.* Unfounded reports are expunged from the Central Register and all records are destroyed. *See id.* at § 412(12). If the local DSS finds that there is "some credible evidence" to support the complaint, the complaint is marked as "indicated" and the individual who is the subject of the report will be listed on the Central Register. *See id.* While the information contained in the Central Register is

generally confidential, certain employers in the child care field are required to ascertain whether potential employees are listed on the Central Register. *See id*. at § 424–a(1). Inquiring employers are only informed that a report exists, and DSS does not inform the employer of the nature of the indicated report. *See id*. at 424–a(1)(e).

Upon the completion of an investigation, the subject of any "indicated" report is notified and has ninety days to request that the report be expunged. *See id*. at § 422(8)(a)(i). If a request for expungement is made, DSS must first determine whether there is "some credible evidence" that the subject committed the acts charged. *See id*. at § 422(8)(a)(ii). Then, DSS must also ascertain whether the acts alleged could be "relevant and reasonably related" to the subject's employment in a field involving contact with children. *See id*. If there is no credible evidence of child abuse or maltreatment, DSS must expunge the record and notify the subject. *See id*. at § 422(8)(a)(iii). If there is some credible evidence, and DSS finds that the allegations are reasonably related to child care, the expungement request will be denied. *See id*. at § 422(8)(a)(v). If there is some credible evidence of child abuse or maltreatment, but the allegations are not reasonably related to child care, the report will not be expunged, but will not be disclosed to potential employers or licensing agencies. *See id*. at § 422(8)(a)(iv).

If an expungement request is denied, an administrative hearing before the state DSS commissioner's office will be held. *See id*. at § 422(8)(a)(v). If the report is not expunged after the hearing, the subject of the report can commence a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules to challenge the decision. Unless expunged earlier, an indicated report is removed from the Central Register ten years after the youngest child referred to in the report turns eighteen. *See id*. at § 422(6).

3

B.     **The 2011 Report**

On August 2, 2011, Kristi Fitch reported that Plaintiff abused Fitch's child during the course of a domestic dispute Plaintiff had with the child's father, who at the time was Plaintiff's boyfriend. *See* Dkt. No. 22-2 at 3. Broome County investigator David Van Etten investigated the report and concluded that the child witnessed a physical and verbal dispute between Plaintiff and her boyfriend in which Plaintiff hit her boyfriend over the head with a glass bottle. *See id.* at 5. Van Etten determined that bruises and lacerations found on the child were not the result of the domestic dispute and, therefore, he found allegations of child abuse to be unsubstantiated. *See id.* He did, however, conclude that there was sufficient evidence to "indicate" Plaintiff for inadequate guardianship. *See id.*

Plaintiff was given the opportunity to challenge the record on file with the Central Register by submitting additional information to support the contention that the record was inaccurate. *See id.* at 55. On November 15, 2011, Plaintiff was informed that an administrative review concluded that Plaintiff's report should be amended and that she was no longer an "indicated subject."[2] *See id.* at 57. On December 20, 2011, Plaintiff received a notice from the New York State Office of Children and Family Services ("NYSOCFS"), which indicated that an administrative review of Plaintiff's record supported the retention of the report and that Plaintiff's request for expungement of the record was denied. *See id.* at 35. The NYSOCFS granted Plaintiff's request for a full evidentiary hearing to ensure that the report was supported by a fair preponderance of the evidence. *See id.* A full evidentiary hearing was scheduled for December 12, 2012. *See id.* at 51.

---

[2] Based on the record before the Court, it is not clear whether this review concerned the 1996 or 2011 allegations.

4

**C.    The 1996 Proceedings**

During the course of the 2011 investigation, Plaintiff alleges that she learned for the first time that her name had been entered in the Central Register as a result of a 1996 report of child abuse and maltreatment. *See* Dkt. No. 22 at 13. On July 26, 1996, a report was made alleging that a child in Plaintiff's care had been mistreated. *See* Dkt. No. 22-2 at 20. An investigation revealed that Plaintiff had given birth to a child who tested positive for cocaine at birth, and DSS determined that there was credible evidence to find that the child had been neglected by Plaintiff. *See id*. On August 23, 1996, Plaintiff was indicated for neglect of a child and an entry of this finding was made in the Central Register. *See id*. Plaintiff did not make any attempt to challenge the 1996 proceedings at any time prior to the filing of this amended complaint in 2012.

**D.    Dismissal of the Claims against Van Etten, Fitch, and Johnson**

On December 6, 2011, the Court granted Plaintiff's motion for *in forma pauperis* status, but dismissed her claims without prejudice pursuant to 28 U.S.C. § 1915. *See* Dkt. No. 4. The Court granted Plaintiff thirty days to file an amended complaint. *See id*. The Court determined that Plaintiff's claims against David Van Etten should be dismissed as protected by qualified immunity, and also that Plaintiff failed to make any allegations sufficient to impose personal liability on Van Etten. *See id*. at 12. Plaintiff's claims against Kristi Fitch were dismissed because Fitch is not a state actor for the purposes of a section 1983 action. *See id*. at 15. Further, the Court found that Plaintiff failed to allege a plausible conspiracy claim. *See id*. at 17.

The Court also dismissed Plaintiff's claims against Defendant Johnson, finding that there were no allegations against him contained in Plaintiff's submissions, thus no showing that he was

5

personally involved in any of the alleged misconduct. *See id*. at 13. The Court cautioned Plaintiff that supervisory liability for damages under section 1983 cannot be established solely by virtue of being a supervisor. *See id*. at 14.

E. **Claims Against Defendant Johnson**

In the second amended complaint, Plaintiff alleges that her due process rights were violated because her name was entered into the Central Register without affording her the opportunity for a hearing and without fully investigating the evidence available. *See* Dkt. No. 22 at 3-4. As a result of having her name in the Central Register, Plaintiff alleges that she was denied employment for which she was otherwise qualified and is unable to earn a suitable income. *See* Dkt. No. 22-1 at 5. Defendant Johnson, the Commissioner of the Broome County Department of Social Services, is the only named Defendant in Plaintiff's second amended complaint. *See* Dkt. No. 22 at 1. Plaintiff claims that Defendant Johnson should be liable for the actions of his employees under the theory of *respondeat superior*. *See* Dkt. No. 22-1 at 15. Plaintiff concedes that while Defendant Johnson was not employed by DSS in 1996, he should still be held liable for DSS's actions because he is currently the head of the organization. *See* Dkt. No. 22 at 6.

Plaintiff alleges that Defendant is liable for violating her constitutional right to due process by denying her a pre-deprivation hearing, violating her Sixth Amendment right to confront her accusers, and violating her Eighth Amendment right against cruel and unusual punishment. *See* Dkt. No. 22-1 at 13-14. She further alleges that Defendant was negligent in failing to oversee the investigation and ensuring that his employees were "even handed" in considering the evidence. *See id*. at 5. Plaintiff contends that in the 1996 investigation,

Defendant and his employee, Van Etten, did not follow Broome County Department of Social Services protocol, which requires that collateral sources be contacted and interviewed during the course of an investigation. *See id.* at 12-13. Plaintiff also claims that Defendant negligently misrepresented her to be an "irresponsible individual." *See id.* at 15. Plaintiff concedes that Defendant was not employed at DSS in 1996. *See* Dkt. No. 22 at 6.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

7

above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference toward *pro se* litigants. *See Nance v. Kelly*, 912 F. 2d 605, 606 (2d Cir. 1990). After *Twombly*, the Supreme Court reiterated the amount of deference that should be afforded to *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*). "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. at 94 (internal quotation marks and citations omitted). The Second Circuit has applied this standard when faced with a motion to dismiss, finding that "even after Twombly, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). The Second Circuit has determined that a *pro se* complaint which provides notice of the claim and the grounds upon which it rests is sufficient to satisfy Rule 8(a), and the merits of the claim are more appropriately left for summary judgment. *See id*. at 216.

**B.     Plaintiff has failed to state a claim against Defendant**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S. Ct. 2510, 2516 (1990)) (other quotation omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (noting that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights" (citation omitted)).

In order to state a claim under section 1983, a plaintiff must allege that (1) the challenged conduct was attributable, at least in part, to a person or entity acting under the color of state law and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993); *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988)).

Plaintiff alleges that Defendant is liable under the theory of *respondeat superior* for the actions of employees under his supervision. *See* Dkt. No. 22-1 at 2. Establishing supervisory liability in a section 1983 action, however, depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989). "Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates," a supervisor cannot be liable under section 1983. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). To sustain a section 1983 claim against a person in his or her individual or official capacity, a plaintiff must allege facts showing the individual's personal involvement in

causing the harm alleged. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted). Generally, the fact that a defendant occupied a supervisory position, alone, will not support the conclusion that the supervisor had personal involvement in the alleged acts. *See Colon v. Coughlin*, 58 F.3d 865, 873–74 (2d Cir. 1995) (holding that the high position held by defendant Commissioner of New York City Correctional Facilities was insufficient to sustain conclusory claim that he negligently trained and supervised officers).

Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *See Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom., Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon*, 58 F.3d at 873.[3]

---

[3] The issue of supervisory liability for a civil rights violation was addressed by the Supreme Court in *Iqbal*, 556 U.S. 662. The Second Circuit has yet to address the impact of *Iqbal* upon the categories of supervisory liability under *Colon*. Lower courts have struggled with this issue, and specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See Sash v. United States*, 674 F. Supp. 2d 531, 524–544 (S.D.N.Y. 2009); *see also Stewart v. Howard*, No. 9:09-CV-0069 (GLS/GHL), 2010 WL 3907227, *12 n.10 (N.D.N.Y. Apr. 26, 2010). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.*, No. 07 CIV. 1801, 2009 WL 1835939, *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 Fed. Appx. 55 (2d Cir. 2010), others disagree

(continued...)

Consistent with the previous order in this case, the Court finds that Plaintiff has failed to plead sufficient facts to show that Defendant personally participated in or had any direct responsibility for the 1996 investigation and indicated report. Plaintiff only states that in 1996, "Defendant's employees violated Plaintiff's constitutional right to family ties" and that in the course of their 2011 investigation, Defendant failed to oversee his employee's to ensure an "even-handed" investigation. *See* Dkt. No. 22-1 at 4–5. Moreover, Defendant was not the Commissioner of Social Services for Broome County in 1996, thus he could not have been personally liable or involved in the actions of DSS employees in 1996. Without establishing some personal involvement on Defendant's part, Plaintiff has failed to state a claim against him. Consequently, Plaintiff's claims based on alleged constitutional deprivations against Defendant are dismissed.

**C.     Supplemental jurisdiction over remaining state-law claims**

In addition to her federal causes of action, Plaintiff asserts state-law causes of action for negligence, negligent supervision, and negligent misrepresentation. *See* Dkt. No. 22. District courts have supplemental jurisdiction over all state-law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. *See* 28 U.S.C. § 1367(a). Application of supplemental jurisdiction is discretionary, however, and "it requires a balancing of the considerations of comity,

---

[3](...continued)
and conclude that whether any of the five categories apply in any particular case depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi*, Nos. 09 Civ. 7283 (JSR), 09 Civ. 9952 (JSR), 2010 WL 2428128, *5 (S.D.N.Y. June 15, 2010); *Qasem v. Toro*, No. 09 Civ. 8361 (SHS), 2010 WL 3156031, *4 (S.D.N.Y. Aug. 10, 2010).

fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted).

Since the Court has granted Defendant's motion to dismiss as to all of Plaintiff's federal causes of action, and in light of the factors listed above, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Plaintiff's state-law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**D.    Opportunity to Amend**

In light of Plaintiff's two previous opportunities to amend her complaint and Plaintiff's failure to oppose Defendant's motion to dismiss, the Court finds that providing a third opportunity to amend the complaint is inappropriate. Plaintiff has failed to provide the Court with any facts that would enable it to conclude that allowing a third amended complaint would be anything but futile. *See  Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC*, 375 Fed. Appx. 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend.  The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend"); *Dyson v. N.Y. Health Care, Inc .*, 353 Fed. Appx. 502, 503-03 (2d Cir. 2009) ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended complaint with prejudice. . . . [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief").

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 23) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 20, 2013
       Albany, New York

_(signature)_
Mae A. D'Agostino
U.S. District Judge